of America, oral argument not to exceed 15 minutes per side, Mr. Pinson Ford, the appellate. Good morning, Your Honors. I'd like to have three minutes for rebuttal if that's all right. And before I get started, I need to let the panel know that soon after this argument, I'm actually leaving my firm for another position because it's a CJA appointment. Another colleague at my firm, Jason Burnett, is taking over the appeal after that at that time, and he's already entered an appearance. Does the clerk? The clerk already knows. Yes, ma'am. And keep your voice up at the end of your sentences, please. Absolutely. So this court granted a certificate of appealability on one issue from Mr. Shields' Section 2255 motion. That issue is whether his trial counsel gave ineffective assistance by failing to argue that his mental retardation contributed to an invalid waiver of his Miranda rights because he didn't fully comprehend the nature of the rights that he was abandoning or the consequences of doing so. It was at the time and remains well settled that mental retardation or diminished mental capacity can contribute to a determination that waiver is not knowing and intelligent. And that argument here would have supported suppression of his highly damaging statement to police, a statement that the government relied on at trial to secure conviction and a life sentence without parole. Now, we know that failing to raise this argument was deficient performance and not a strategic decision to use Mr. Shields' statement to his advantage at trial. We know this because trial counsel actually did move to suppress that statement. He just did so on a borderline feudal ground of voluntariness rather than the substantial ground that he had based on Mr. Shields' mental retardation. And he failed to raise that argument even though he had every opportunity to do so. There were several months between when the district court adjudicated that Mr. Shields was mentally retarded for purposes of the death penalty and the time of the suppression hearing. As the court on direct appeal noted, he certainly had the opportunity to make that argument, but he never did it. So failing to raise that argument wasn't an excusable mistake. It was in no way a strategy call as the government contends. And maybe this is part of the prejudice analysis, but in determining whether to try to raise something, if your chances are very, very small, if the law is such that you're not going to win or you're very unlikely to win, what's the law if it's deficient to not take a flyer on something there's only a 5% or a 2% chance to win? Sure. Putting aside that I think that it was much higher than 2% or 5% here, the deficient performance analysis, I think in this case, is like this court's appellate ineffective assistance cases where the question is simply, should he reasonably have raised this argument? And there are cases that this court has cited that we cited in our briefs that say, right, where there's almost no chance of success or where the argument would have been futile, we don't. Here, one of my questions is that there's a lot of back and forth about what his scores were and whether he could pay his credit card bills or get credit cards, but he was so clear about, I know my Miranda rights, I know I don't have to talk, the very same evidence that would sort of go to actual voluntariness would seem to go to ability to be voluntary and would be equally strong. So, Your Honor, as an initial matter, this is a question of whether his rights were waived knowing and intelligently, not just voluntarily. It's not a matter of coercion. Okay. With respect to your question. Add those words. Absolutely. Because it sounds, at least what I just quoted, sounds knowing and intelligent. A couple of things. First of all, merely saying the words Miranda or saying that I know my rights does not say that he actually understands the rights. And that is the test here, whether he had a full awareness of the rights that he was abandoning and the consequences of doing so. That's especially true with a person who is mildly mentally retarded, as is the case for Mr. Shields. There's record evidence from the mental, from the Atkins determination hearings that say that when asked a question initially, someone with mental retardation may give a plausible sounding answer, but any further probing, it makes it clear that they actually do not understand what's going on. That may well have been the case here with Mr. Shields. May well. Would he have been able to plead guilty? That is, would not the very same argument you're making now say that he wouldn't have the ability to plead guilty because he couldn't understand that? I'm not sure that it's the same question there. It may be that there's a question more of voluntariness and free will with respect to the pleading guilty as opposed to here where the Supreme Court in Moran said specifically that Miranda waiver requires two things. One, it's voluntariness, but it also must be knowing and intelligent. For pleading guilty, don't you have to know what you're pleading guilty to and being intelligent enough to understand? The reason I'm raising that is that if there's any policy here as a policy matter, being too retarded to do certain things may be detrimental as well as favorable. That's right. I definitely don't want to go too broadly on it, so that's why I'm probing. Right. I understand that. It may also be that when pleading guilty, he would have the assistance of an attorney, and there are ways that someone who initially doesn't understand can be explained. It can be explained to them in a way that they do understand it, but they have to at some point show that understanding. So as in this case, it may be that had Mr. Shields had the rights explained to him in some detail more than just a normal functioning individual, that he could have eventually been able to understand the rights. But there's no evidence here that the officers gave that sort of extended discussion or explanation of the rights in that way. So I want to get to prejudice before we run out of time. Of course, the merits issue on Miranda does go to both deficient performance and prejudice. The prejudice in this case was substantial. Mr. Shields' statement was among the most damaging, probably the most damaging pieces of evidence that the government brought to bear against him in this case. It was a 38-minute long taped statement in Mr. Shields' own words, placing him at all of the relevant parts of the kidnapping. It corroborated other testimony that by itself was sketchy, certainly less credible, particularly with respect to Lenzo Parker, who provided testimony for a significant portion of the events of that night as a cooperator. He was a co-defendant who was given a 20-year sentence rather than the mandatory life or potential death sentence that this charge carried. Now, on prejudice, the standard for that, of course, is a reasonable probability. The ultimate standard is that there has to be a reasonable probability sufficient to undermine confidence in the outcome of the proceeding. In this case, that's two parts. First, there must have been a reasonable probability of success on this argument at the time counsel raised it, which was during the motion to suppress. And second, a reasonable probability that without the statement that at least one juror would have voted not to convict Mr. Shields. A couple things. So, counsel, what's the remedy at this point? So, we've asked for... Would you have him released or would you have a... I'm sorry. Would you have him retried without it or would you have a hearing on whether he was capable of having a knowing and intelligent waiver based on that colloquy? We've asked for both of those in the alternative, Your Honor. And that depends on what this panel thinks about the evidence available for determining whether he understood his rights at the time. In our brief, we've laid out what we think is the best case for that based on the Atkins determination and the hearings and the expert testimony there. Also, observable indications during the interrogation, him mentioning that he was in special education and that he didn't read well. So, we think that those are enough on their own to show that he did not understand and did not make a knowing and intelligent waiver at the time. That would be we would find in the matter of law that he wasn't knowing and intelligent. The alternative is it's a question of fact to go back and have a judge figure it out. That's right, Your Honor. And I think in that regard, the important thing that we lack here and which Judge Clay mentioned in his dissent on direct appeal is focused testimony, is particularly expert testimony on whether he actually could have understood the warnings. In several of the cases we cite, there are some district court cases and even in Garner itself, there was expert testimony that this defendant could or could not understand the warnings. Right. And it would seem only fair to let the prosecution have their shot at it because they haven't. Right. This argument was never raised at any point in the proceedings and an evidentiary hearing would be a way to ensure that we had the best evidence available for determining whether he actually could understand the warnings at the time. At any subsequent time, has he made any statement or affidavit that he didn't understand? Not that I'm aware of. Let me take you back when we went through initially what he said. You and I, I think we both said, well, I know my rights. And you said, well, I know my rights might not be enough. But he also said, I know I don't have to talk to you if I don't want to and I can stop talking any time I want to stop. Am I quoting the record correctly? Isn't that awfully knowing and intelligent? So there is, first of all, there's some discrepancy in whether he said the second bit, that I know I can stop talking at any time. That was the testimony of Detective Pearlman at trial. At the motion to suppress hearing, he actually only said, Mr. Shields said, I know I don't have to talk to you if I don't want to. And we lay out in our brief those citations, and then the government uses the other ones just to point that out. Again, I think the answer there is simply saying back one of the rights to the detectives does not necessarily mean that he understands that right, much less all of the rights or the consequences of abandoning them. And that's what's required. At the least, the cases say that you must understand that you don't have to talk if you don't want to, that you can stop talking at any time, of course, that you have the right to an attorney. You said something about repeating back, which sometimes is what happens. As I read the record, and help me here, Pearlman, I guess, says he asked him to read the first line out loud, which he did, so he could read the first line out loud, which was not the same statement, is it? Something that it may have been something similar to it, right, that I know that I don't have to. Yeah, but he wasn't just regurgitating, you know, the officer says X, he says X. Right, on that particular statement, it may be. And it may be that he understood that one particular thing, that I don't have to talk to you. But there's a whole litany of rights that they have to understand for knowing an intelligent waiver. I see my time is up. Thank you. Your Honors, I am Tony Arvin from the U.S. Attorney's Office in Memphis. I would ask the court to affirm the district court's denial of the defendant's Section 2255 motion. The defendant asserts that he received ineffective assistance of counsel because his trial counsel did not argue mental retardation as a basis for his Miranda rights being invalid. Your Honors, I would submit that this claim fails on both prongs of the Strickland v. Washington test. First, as to the deficient performance test, we would submit that it fails on that. This court on direct appeal, with an opinion authored by Judge Merritt, found, rejected that substantive claim on the merits. So you cannot say that counsel was ineffective when this court has previously found that the claim was a loser on the merits, as Judge Merritt said. I've got a couple of merits in there. I've got three or four merits, but I hope you understood that. Also, even if you did revisit the case or that decision, Garner v. Mitchell, those principles would still let the government win. Further, Your Honor, when you go to the prejudice prong, that presents a double challenge for the defendant. He's both got to show that Judge Donald would have granted the suppression motion had they argued mental retardation. Of course, Judge Donald, who was then the trial judge, was intimately familiar with the record. She's the one that held the Atkins hearing. She knew in depth this defendant's mental capabilities. And she specifically found that he validly waived his Miranda rights. Then, Your Honors, even if they overcame that challenge, they would still have to overcome the challenge of the trial evidence. And the trial evidence, even absent the statement, was overwhelming. You had the testimony of Lenzo Parker, the accomplice who joined in later, who testified about all the things he saw. His testimony alone would have been enough to convict. He certainly didn't get a great deal. He got 20 years. He never saw Mr. Lott until he jumped out of the car and ran. He was just an accomplice. Then you've got the video that shows Mr. Shannon Shields at the corner grocery store. You've got his girlfriend, Franchetta Levy, identifying him on the video. You've got witnesses that saw them after they had Mr. Lott and brought him over to Polk Street in the trunk, that saw Shannon Shields with the victim's car. You've got witnesses that saw him flashing money. You've got witnesses that saw him with Sonny Shields, who was certainly the other kidnapper. You've got Kevin Jordan, who testified that Shannon Shields told him to stay away from the car that was hot. You've got him having the burns on his face and hands from where they burned up the car over in Memphis after burning Mr. Lott's body in Arkansas, in the field in Arkansas. You've got the testimony of Franchetta Levy, the girlfriend, of course, who identified him on the video. But he also made an admission to her when he called her from the jail that I was there when Shannon Shields shot a man. He had mud on his clothes when he showed up at his aunt's house in the middle of the night. He had the burns. They saw the burns. He told four or five different stories about how he got the burns. He fled to Grenada after this incident. When the officers got his shoes, they matched the prints out in the field. The proof was just simply overwhelming, even absent the statement. He gave a false name when he went down to Mississippi, said his name was Willie Oliver. He also, of course, when the officers confronted him outside the courthouse in Greenville, he blurted out that I'm not the killer. Of course, that didn't implicate Miranda. He was blurting it out before they even tried to question him. So the proof was truly overwhelming, and there would have been nothing to undermine this court's confidence in the jury's verdict. Your Honors, I would ask the court to affirm this case. If the court has no further questions, I will sit down. It's sort of a basic question. If you have evidence that somebody is mentally retarded and has particular deficits, and they give a statement, I mean, why wouldn't you have a hearing on their capacity to knowingly and intelligently waive the right to be silent? I mean, why wouldn't that be what you would expect as a matter of course? There are two reasons. First is that the principles of a Garner v. Mitchell say you have to take it from the officer's perspective, and they had no reason to think that he had any mental impairments that would keep him from validly waiving his Miranda rights. He told the officers he had no mental condition. He said he knew his Miranda rights, said he'd been arrested before. He said he understood he didn't have to talk. He understood he said he understood he didn't have to talk later. So really, that would have been a losing. The defense counsel in this case, the trial counsel, really, the bottom line is they had no good defense. They had no good basis to suppress the case, and they had no basis really to defend it at trial. It's one of these things where there's just, as a practical matter, they did what they could. And the second point, I can't remember what my second point was, but I'm sure I had one, but I can't remember. As to why not just have a hearing on the mental retardation, of course, Judge Donald intimately knew the defendant's mental capabilities. I mean, there sort of was a hearing on his mental capacity, albeit under the Atkins. Right. We had a two-week hearing where they explored every possible bit about his capabilities with two experts from the government and two experts for the defense. And I guess the bottom line is even if defense made this motion, the case can still be decided on prejudice at the trial issue. There was a hearing on the suppression motion, just not under exactly this theory. Right. They argued voluntariness, but Judge Donald also decided there was a valid waiver of Miranda rights in this case. Not only voluntariness. She decided that. Would it be fair to say that was gratuitous in the sense that it wasn't affirmatively raised to her? I think that's correct. I think she was just making a complete record. I think she was covering all the bases. Well, okay. Yeah, it was a different context. It didn't explore that that motion didn't ask her to look at his mental capacities.  It didn't, but of course, the Garner v. Mitchell, we have to look at the police conduct, too, and what the reasonable officers know. But you're right, it didn't. But I think a key here is that Judge Donald knew all the facts. And I would point out that basically the Sixth Circuit's prior ruling in this case, I mean, that's basically the law of the case. I mean, that was considered by this Court on the merits. That wasn't just an advisory opinion. It means something. But, I mean, it's a habeas case. It's a habeas case. Now, the burden is now, of course, on the defendant to show that his Miranda rights were violated. I read a recent opinion by Your Honor, I guess Williams v. Houck, I think it was in this January or last January, where the Court clearly stated in a habeas case, the burden is now on the defendant to show that his Miranda rights were invalid. And they have not done so here. And even if they had shown deficient performance, they have still not shown prejudice. And again, Your Honor, I will sit down. I would point out to Judge Boggs that a good case in our favor is Unites v. Macklin, which I had the pleasure to argue before Judge Boggs. Back in 1990, he wrote the opinion. The one thing I would note is that your opinion was a lot better than my brief back in 1990. So, thank you, Your Honors. Your Honors, I'll try to hit these points quickly. I'll start with Macklin. First of all, that was a different issue. That was about voluntariness. And it was about coercion and not distinctly relevant to this particular issue about knowing an intelligent waiver. Number two, Judge White, you asked about why wouldn't you just have a hearing regarding mental retardation with respect to waiver. Exactly. There was an Atkins hearing, but that's not the same question. It goes into mental retardation. It did not expressly get to this question. Of course, the reason they didn't have a hearing is because counsel failed to raise that issue. Number three, my colleague mentioned Garner. That, of course, is relevant to this issue. And it does say you look from the officer's perspective. But Garner also says you should look to the actual understanding of the defendant because, especially in close cases, it can show whether the officer should have known that the defendant could not or may not have known. And Garner says you can't disregard signs or even hints that he may have a lack of understanding. And here, of course, Mr. Shields said, I was in special education classes. That, at the least, requires some additional probing on the part of the officers. As to prejudice, the government says the trial evidence was overwhelming. But that statement, I don't think we can overstate how important that statement was to the government's case. It's him in his own words. It gives the government a coherent narrative. And it fills in some holes in the case that I think are pretty important. First of all, at the corner grocery. Without that statement, you have a videotape that does not show any of the abduction. It just shows them walking in the parking lot and you have a juvenile 12-year-old witness whose mom didn't even believe him at first, saying that he saw this thing that happened. The statement adds in that Shannon Shields was, in fact, there, that he jumped in the passenger seat. It does not dispute that part of the story. If the jury thought that that was reason enough to find that Mr. Shields aided and abetted, that's not there anymore. We cite in our brief several other points where the trial evidence is significantly undermined or at least not nearly as strong without that statement. The government also mentioned Lenzo Parker and that his testimony alone was enough to convict him. His testimony alone was also particularly subject to suspicion. Again, he's a cooperator. He has a 20-year sentence instead of a potential life or death sentence. And yet, when you add in Mr. Shields' statement, much of Lenzo Parker's statement is corroborated. There's very little that you have to go to get to believing his statement at that point. If there are no further questions.